1
2
3
4
5
6
7
8
9                  **UNITED STATES DISTRICT COURT**
10               **SOUTHERN DISTRICT OF CALIFORNIA**
11

12 UNITED STATES OF AMERICA,             Case No. 13cr222-BTM

13                          Plaintiff,     **ORDER DENYING MOTION TO**
                                       **DISMISS INDICTMENT**
14     v.

15 JULIO ALEXANDER GUZMAN-
VASQUEZ,

16                         Defendant.

17

18       Defendant Julio Alexander Guzman-Vasquez ("Defendant") has filed a motion to

19 dismiss the indictment pursuant to 8 U.S.C. § 1326(d) on the grounds that his August 23,

20 2010 order of removal was invalid. (See ECF No. 15.) For the reasons discussed below,

21 Defendant's motion to dismiss the indictment is **DENIED**.

22 //

23 //

24 //

25 //

26 //

27 //

28 //

## I. **BACKGROUND**

Defendant received a Notice to Appear ("NTA") dated May 24, 2010, charging that he was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an "aggravated felony" after admission. Specifically, the NTA alleged that on January 25, 2007, Defendant was "convicted in the Superior Court of California, County of Los Angeles, for the offense of Resisting an Executive Officer, in violation of Section 69 of the California Penal Code." (See ECF No. 17-1.)

During a removal hearing on July 29, 2010, Defendant admitted each of the allegations set forth in the NTA. The immigration judge ("IJ") asked Defendant if he wanted to attack his conviction in state court, explaining that if Defendant's conviction was an aggravated felony, then there would be no possibility of relief from removal. Defendant declined. The IJ determined that Defendant's conviction for resisting an executive order was an aggravated felony, although it is a point of contention whether the IJ employed the categorical or modified categorical approach, see infra. At the next immigration hearing on August 23, 2010, the IJ reiterated that he found Defendant's conviction under CPC § 69 to be an aggravated felony  and ordered him removed after Defendant waived his right to appeal.

On January 16, 2013, the grand jury returned an indictment, charging Defendant with one count of being a deported alien who knowingly and intentionally attempted to enter the United States in violation of 8 U.S.C. § 1326(a) and (b). The indictment alleges that Defendant was removed from the United States subsequent to April 1, 2009 and attempted to re-enter the United States without permission on November 17, 2012. (See ECF No. 1.)

## II. **STANDARD**

To sustain a collateral attack under 8 U.S.C. § 1326(d), a defendant must demonstrate that (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order

was fundamentally unfair.  United States v. Ubaldo-Figueroa, 364 F.3d 1047, 1048 (9th Cir. 2004).  An underlying deportation order is "fundamentally unfair" if (1) the defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.  Id.

An alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order.  United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000). However, the exhaustion requirement of 8 U.S.C. 1326(d) "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process."  United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001).

## III.  DISCUSSION

Defendant argues that the IJ's finding that he had been convicted of an aggravated felony was erroneous and constituted a due process violation. As such, he contends, this alleged due process violation excused the exhaustion requirement, improperly deprived him of the opportunity for judicial review, and made entry of the order fundamentally unfair.

## A.  Applicable Law

The first issue the Court must consider is whether the applicable law is the law at the time of the hearing before the IJ or the law at the time of the § 1326 motion.  Under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii).   Aggravated felonies include crimes of violence.  See 8 U.S.C. § 1101(a)(43(F).  Defendant argues that his conviction does not qualify as a crime of violence and therefore does not constitute an aggravated felony.

An offense is a "crime of violence" if it is:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.  The term "crime of violence" "suggests a category of violent, active crimes." Leocal v. Ashcroft, 543 U.S. 1, 11 (2004).  The Ninth Circuit has held that the force necessary to constitute a crime of violence under 18 U.S.C. § 16 "must actually be violent in nature."  Singh v. Ashcroft, 386 F.3d 1228, 1233 (9th Cir. 2004) (internal quotations omitted).

There are two ways by which a court may determine that a defendant's conviction constitutes a crime of violence.  Under the categorical approach set forth in Taylor v. United States, 495 U.S. 575 (1990), the inquiry is whether the offense is categorically a crime of violence, based on the statutory definition of the offense.  If it is not a categorical crime of violence, the court then applies the modified categorical approach set forth in Shepard v. United States, 544 U.S. 13 (2005).  Under the modified categorical approach, the court considers, "in light of the facts in the judicially noticeable documents [enumerated in Shepard], (1) what facts the conviction necessarily rested on (that is, what facts the trier of fact was actually required to find); and (2) whether these facts satisfy the elements of the generic offense."  United States v. Aguila-Montes de Oca, 655 F.3d 915, 940 (9th Cir. 2011).

CPC § 69 may be violated either "by attempting through threats or violence to deter or prevent an officer from performing a duty imposed by law" or "by resisting by force or violence an officer in the performance of his or her duty."  Flores-Lopez v. Holder, 685 F.3d 857, 862 (9th Cir. 2012) (citing In re Manuel G., 16 Cal.4th 805, 66 Cal.Rptr.2d 701, 941 (1997)).  Defendant appears to have been convicted under the latter prong.  See Def. Mot. at 17.

Since the defendant's hearing before the IJ, the Ninth Circuit has held that resisting an executive officer in violation of section 69 of the California Penal Code is   not a categorical crime of violence.  Flores-Lopez v. Holder, 685 F.3d 857, 864-65 (9th Cir. 2012). However, the Government argues that at the time of the immigration hearing, a conviction under CPC § 69 had been held to be a categorical crime of violence.  It relies on four unpublished BIA decisions to that effect.  See In re Navarro Lopez, 2009 WL 3713174 at *2

1  (BIA Oct. 22, 2009), In re Flores-Lopez, 2008 WL 2401047 at *3 (BIA May 20, 2009)

2  (overturned by Flores-Lopez, 685 F.3d at 857), In re Lara, 2003 WL 25761599 at *1 (BIA

3  June 30, 2003); see also In re Shamim, 2007 WL 1724866 at *3 (BIA May 25, 2007).

4        However, the Court agrees with Defendant that this is insufficient to establish that the

5  Ninth Circuit's decision in Flores-Lopez constituted a clear "change in law" such that it

6  "created a new, previously unavailable, possibility of relief by making a deviation from

7  longstanding Ninth Circuit and BIA precedent."  See United States v. Vidal-Mendoza, 705

8  F.3d 1012 at 1018, 1020 (9th Cir. 2012).[1]  Prior to Flores-Lopez, there was no controlling

9  precedent on this issue, and indeed, an unpublished Ninth Circuit decision held that CPC

10 § 69 was not a categorical crime of violence, albeit in the sentencing context.  See United

11 States v. Fowles, 225 F. App'x 713, 715 (9th Cir. 2007).  Flores-Lopez thus may be

12 considered to have clarified the law rather than changed it outright.  Therefore, the Court

13 holds that at the time of Defendant's immigration hearing, CPC § 69 was not a categorical

14 crime of violence, as set forth in the Ninth Circuit's decision in Flores-Lopez.

15 //

16 //

17 //

18 //

19 //

20

21      [1]In United States v. Vidal-Mendoza, 703 F.3d 1012 (9th Cir. 2012), an immigration
   judge told the defendant that he was ineligible for voluntary departure because, under the

22 case law in existence at that time, his conviction for third-degree rape under Oregon law
   (sexual intercourse with another person under 16 years of age) constituted "sexual abuse

23 of a minor" and an aggravated felony.  Four years after his removal, the Ninth Circuit decided
   a case which adopted a different definition of "sexual abuse of a minor," which the

24 defendant's conviction did not meet.
        When the defendant was indicted under 8 U.S.C. § 1326(a), the defendant moved to

25 dismiss the indictment on the ground that his removal was invalid because the immigration
   judge failed to inform him of his eligibility for voluntary departure.  The Ninth Circuit rejected

26 this argument, explaining that immigration judges need not anticipate future changes in law
   when determining an alien's apparent eligibility for relief from removal.  Id. at 1017.  Due to

27 the fact that the post-removal precedent was a clear "change in law," and the defendant
   became potentially eligible for relief only under this change in law, the Ninth Circuit held that

28 the immigration judge correctly informed the defendant that he was ineligible for voluntary
   departure.

B. **The Record That May Be Considered**

The main inquiry under the modified categorical approach is whether the defendant's actions involved sufficient use of force so as to constitute a "crime of violence" and therefore an aggravated felony.  However, the Court must first determine whether, in doing the modified categorical analysis, the Court is limited to what was in the record before the IJ. Under the modified categorical approach, the IJ was required to look at "the facts the conviction necessarily rested on." Aguila-Montes de Oca, 655 F.3d at 940.  While Defendant in pleading no contest to the CPC § 69 charge "stipulate[d] to a factual basis based on the police reports," Def. Mot. at 13, Defendant asserts – and the Government does not contest – that the IJ did not have a copy of the plea colloquy or police reports when he determined that Defendant had been convicted of an aggravated felony. See id. at 12.

The Government relies on United States v. Bustos-Ochoa, 704 F.3d 1053 (9th Cir. 2012) in arguing that the Court may consider documents that were not before the IJ.  In Bustos-Ochoa, the defendant argued that his prior removal was fundamentally unfair because the immigration judge had failed to inform him about the availability of voluntary departure.  The immigration judge had told the defendant that he was ineligible for voluntary departure because he had been convicted of a drug crime, although the government had never introduced into evidence the charging document or the defendant's guilty plea.

The district court determined that it could consider documents that had not been before the immigration judge and found that because the defendant was ineligible for relief at the time of his removal, he was unable to show prejudice.  The Ninth Circuit affirmed, noting first, that the defendant's position "would shift impermissibly the burden of proof in immigration hearings," and second, that the defendant had failed to show prejudice.

The Defendant here argues that his case is distinguishable because he was found removable for being deportable as charged, not because he was ineligible for discretionary relief.  In removal proceedings, the government has the burden of proving "by clear and convincing evidence" that an alien is deportable as charged, whereas an alien has the burden of establishing eligibility for discretionary relief.  See 8 CFR § 1240.8(a) & (d).  The

13cr222-BTM

1   Court agrees that Bustos-Ochoa is inapplicable insofar as the burden-shifting language is

2   concerned.  However, Defendant must still show prejudice.  As the Ninth Circuit stated in

3   Bustos-Ochoa:

4           [A]n alien who is statutorily barred from obtaining relief from
            removal cannot be prejudiced by an IJ's failure to inform him
5           about the possibility of applying for such relief. This remains true
            even if the government does not introduce noticeable
6           documentation of the alien's aggravated felony conviction before
            the IJ.
7

8   Bustos-Ochoa at 1057.  Similarly, if Defendant was in fact deportable as charged, regardless

9   of whether the government introduced such documentation before the IJ, he cannot show

10  prejudice.  The Defendant analogizes his situation to where there was insufficient evidence

    of deportability on direct review by the Ninth Circuit from a decision by the BIA.  In such
11
    circumstances, the petition for review would be granted and the case remanded to dismiss
12
    the notice to appear.  See Hernandez-Guadarrama v. Ashcroft, 394 F.3d 674, 679 (9th
13
    Cir.2005).  However, in the § 1326(d) collateral attack context, the defendant must show
14
    actual prejudice, that is, that the error by the IJ resulted in him being deported when he
15
    actually was not deportable.  See United States v. Garcia-Martinez, 228 F.3d 956, 963 (9th
16
    Cir. 2000); United States v. Leon-Leon, 35 F.3d 1428, 1432 (9th Cir. 1994).
17
            Therefore, assuming without deciding that it was a violation of due process for the IJ
18
    to find the defendant deportable as charged, the Court holds that it may now consider the
19
    police reports and other noticeable documents in determining whether the defendant was
20
    prejudiced.
21
    //
22  //

23  //

24  //

25  //

26  //

27  //

28  //

1  **C.** **Factual Basis**

2     At the time Defendant pled no contest to a violation of CPC § 69, the judge asked,

3  "Counsel join in the waiver, concur in the plea, and stipulate to a factual basis based on the

4  police reports in this case and your client's past criminal and DMV history?"  The Defendant's

5  attorney said, "Yes."  See Tr. at 6, Def. Ex. E.  Defendant argues that because he did not

6  confirm the factual basis himself, but rather his lawyer answered for him, it is insufficient for

7  the purposes of the modified categorical approach.  See Def. Mot. at 13-14.  But as the

8  Government correctly notes, the Ninth Circuit has held that a counsel's stipulation to the

9  factual basis supporting the plea agreement binds the defendant as well when made in the

10  defendant's presence and with his authority.  See United States v. Hernandez-Hernandez,

11  431 F.3d 1212, 1219 (9th Cir. 2005).

12     The next question before the Court is what the Defendant stipulated to as part of the

13  "factual basis" for his no-contest plea.  The Court finds unconvincing Defendant's argument

14  that he only stipulated generally to the fact that he had committed acts sufficient to warrant

15  a conviction under CPC § 69 and not to all of the specific facts in the police reports.  While

16  the California Supreme Court stated in People v. Holmes, 32 Cal. 4th 432 (2004) that "[t]he

17  factual basis required [under California law] does not require more than establishing a prima

18  facie factual basis for the charges," id. at 441 (footnote omitted), the Court disagrees with

19  Defendant's interpretation that this means that he was not admitting to any particular facts

20  in the police reports.  Rather, in context, it seems clear that the California Supreme Court

21  was merely saying that the court does not have to engage in exhaustive fact-finding and

22  need only find that there are sufficient facts as stipulated to support a conviction.

23     The Court also agrees with the Government that the other case Defendant relies on,

24  In re Jonathan T., 166 Cal. App. 4th 474 (2008), does not support the argument that the

25  defendant may stipulate to the police reports without stipulating to all the facts therein.  In

26  In re Jonathan T., the defendant minor pled guilty to one count of home invasion robbery and

27  stipulated that the police reports would form the factual basis for his admission.  The trial

28  court set his maximum confinement time at nine years, the sentence for robbery committed

in concert with two or more other persons, rather than six years, the sentence for first-degree robbery.  After determining that acting in concert is a sentencing enhancement that the government must prove beyond a reasonable doubt, the court of appeals held that the minor's due process rights were violated because the minor had not admitted that he acted in concert nor was such an offense alleged, even if the police reports forming the factual basis for the guilty plea for robbery alleged such facts.  Id. at 483.  Thus, unlike in the present case, the question was whether the factual basis for one charge was sufficient to support a separate charge.

Turning back to the case at hand, Defendant stipulated to a factual basis sufficient to support a conviction for "resisting by force or violence an officer in the performance of his or her duty," per the second prong of CPC § 69.  See supra.  The use of force was therefore a necessary finding to which Defendant stipulated.

**D.  Degree of Force Used**

The Court now turns to the final question, namely, whether Defendant's actions underlying the conviction constituted *enough* force so as to "satisfy the elements of the generic offense," i.e., constitute a crime of violence and therefore an aggravated felony.  Cf. Aguila-Montes de Oca, 655 F.3d at 936.  As noted above, the force necessary to constitute a crime of violence "must actually be violent in nature."  Singh, 386 F.3d at 1233.

According to the police report, Def. Ex. F (ECF No. 15-2 at 28-29), Officer Dinse observed Defendant driving erratically and conducted a traffic stop.  Defendant exited his vehicle and ran, and Officer Dinse and his partner Officer Maheia chased him on foot.  Officer Dinse caught up to him and grabbed him by the shoulders, pulling Defendant off the fence he was attempting to scale.  Defendant "landed on the sidewalk and immediately began turning his upper torso side to side in an attempt to break free."  Id. at 28.  He used sufficient force to break free of Officer Dinse's grasp, and continued running.

Officer Dinse once again caught up with him and conducted a leg sweep, causing Defendant to stumble and strike his forehead on a nearby car.  Defendant then fell to the

ground.  Officer Dinse approached him and kneeled on Defendant's back while grabbing his left arm so as to handcuff him.  Defendant "immediately pulled his left arm away and attempted to sit up."  Id. at 29.  Officer Dinse again grabbed Defendant's left arm and used his upper body to attempt to control Defendant while he attempted to handcuff him.  Defendant "continued to resist by refusing to place his arms behind his back by locking out his elbows."  Id.  Officer Dinse radioed for backup, and Officer Maheia knelt on Defendant's left shoulder area and applied her body weight, allowing Officer Dinse to place Defendant's left arm in a wristlock and handcuff him.

While there is no explicit standard as to what minimum degree of force is necessary to meet the criteria for a crime of violence, the Supreme Court has said that 18 U.S.C. § 16 refers to a category of "violent, active crimes," where more than "merely accidental or negligent conduct" is required.  Leocal v. Ashcroft, 543 U.S. 1, 11 (2004).  In a similar vein, the Ninth Circuit has indicated that more than "an ephemeral touching" is needed.  See Singh, 386 F.3d at 1233.

Defendant's conduct was unquestionably active and violent.  He resisted arrest through the intentional use of physical force, such that Officer Dinse found it necessary to radio for backup and it required two police officers to subdue him.  Having applied the modified categorical approach, the Court holds that Defendant's conviction was for a crime of violence, and that Defendant was therefore not prejudiced by the IJ's finding that he had been convicted of an aggravated felony and was deportable.  The Court therefore **DENIES** Defendant's motion to dismiss the indictment.

//

//

//

//

//

//

//

13cr222-BTM

1

### IV.  <u>CONCLUSION</u>

2

For the reasons discussed above, Defendant's motion to dismiss the indictment (ECF

3

No. 15) is **DENIED**.

4

5

**IT IS SO ORDERED.**

6

DATED:  April 23, 2013

7

BARRY TED MOSKOWITZ, Chief Judge

8

United States District Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13cr222-BTM